IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NATIONAL ASSOCIATION OF BLIND MERCHANTS, et al., | § § § § § § § § § § § § § | |
| Plaintiffs, | | |
| v. | | No. 3:24-CV-277-L |
| THE ARMY & AIR FORCE EXCHANGE SERVICE, et al., | | |
| Defendants. | | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

On July 1, 2024, Defendants moved to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) based on lack of subject matter jurisdiction or, alternatively, for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (Dkt. No. 15 ("Mot.").) Plaintiffs filed a response in opposition on August 12, 2024, (Dkt. No. 20 ("Resp.")), and Defendants filed their reply on August 26, 2024, (Dkt. No. 22 ("Reply")). U.S. District Judge Sam A. Lindsay referred the motion to a magistrate judge for a hearing, if necessary, and to submit proposed findings and recommendations for disposition of the motion. (Dkt. No. 17.) By Special Order 3-354, the motion was transferred and reassigned to the undersigned magistrate judge on August 23, 2024. (Dkt. No. 21.) Upon consideration of the briefs and relevant caselaw, the undersigned recommends that the District Judge **GRANT** Defendants' motion and **DISMISS** this action.

# I. BACKGROUND

Enacted in 1936, the Randolph-Sheppard Act ("RSA") creates a program whereby blind individuals can be licensed to operate vending facilities on federal properties and given priority in operating such facilities. *See* 20 U.S.C. § 107(b). Under the RSA, the Secretary of Education is assigned responsibility for promulgating regulations and designating an agency in each state to administer the program in that state. *See Patten v. District of Columbia*, 9 F.4th 921, 923 (D.C. Cir. 2021). The administering entity—referred to by statute as the "state licensing agency" ("SLA")—is responsible for licensing blind vendors, finding appropriate placements for them, and monitoring vendors' performance for compliance with program requirements. *Id.*

One of the features of the RSA is a prescribed grievance procedure. The Act creates two avenues for addressing grievances. First, "[a]ny blind licensee who is dissatisfied with any action arising from the operation or administration of the vending facility program may submit to a[n SLA] a request for a full evidentiary hearing, which shall be provided by such agency[.]" 20 U.S.C. § 107d-1(a). If the blind licensee is dissatisfied with the SLA's action or the decision resulting from that hearing, he may file a complaint with the Secretary of Education, "who shall convene a panel to arbitrate the dispute[.]" *Id.*

A second grievance procedure enables SLAs to challenge a federal agency's failure to comply with the RSA and implementing regulations. *See* 20 U.S.C. § 107d-1(b). If an SLA believes a federal agency is failing to fulfill its obligations, the SLA

2

may file a complaint with the Secretary of Education, and the Secretary is then obligated to convene an arbitration panel to decide the matter. *Id.* The statute provides that, in the event an arbitration panel determines that a federal agency's actions violate the RSA, the agency head "shall cause such acts or practices to be terminated promptly and shall take such other action as may be necessary to carry out the decision of the panel." *Id.* § 107d-2(b)(2)(C). The results of both grievance procedures are subject to appeal and judicial review as a final agency action under the Administrative Procedures Act ("APA"), 5 U.S.C. § 704. *See* 20 U.S.C. § 107d-2(a).

Plaintiff National Association of Blind Merchants is a Section 501(c)(3) organization comprised of blind vendors licensed under the RSA. (*See* Dkt. No. 2 ("Compl.") ¶ 9.) Individual Plaintiffs Alicia Morris, Edgar Mendez, Shannon Shelton, and Steven Hickey are blind vendors who reside in various states and operate a vending facility at a base, hospital, or other installation maintained by the Department of Defense ("DoD"). (*See* Compl. ¶¶ 10-13.)

Plaintiffs bring this action against Defendant Army & Air Force Exchange Service ("AAFES")—a "non-appropriated fund instrumentality" of the United States that provides goods and services on Army and Air Force installations—and individual Defendants in their official capacities as director of AAFES, Secretary of the Army, Secretary of the Air Force, and Secretary of Defense. (Compl. ¶¶ 14-18.) Plaintiffs allege that AAFES refuses to comply with its obligations under the RSA, including by refusing to give priority to blind vendors at DoD installations and by

3

modifying or expanding vending facilities without giving proper notice and required opportunities to blind vendors. According to Plaintiffs, AAFES's refusal to comply with its obligations under the RSA emanate from an apparent belief that certain DoD policies guiding AAFES supersede obligations it has under the RSA. (*See* Compl. ¶¶ 2-8.) Plaintiffs allege specific consequences they contend violate or potentially violate the RSA as a result of AAFES policies: Mr. Shelton is at risk of having his vending machines reduced at Tyndall Air Force Base; AAFES removed some of Mr. Hickey's vending machines at a community hospital on Fort Carson; AAFES precluded Ms. Morris from providing vending services on Fort Gordon; and Mr. Mendez has been deprived of opportunities at the Corpus Christi Army Depot based on AAFES's expansion of vending facilities without giving priority to blind vendors. (Compl. ¶¶ 64, 71, 77, 79-81.)

Defendants move to dismiss the action because Plaintiffs have not grieved their claims under the procedures established by the RSA or, alternatively, because Plaintiffs do not have standing to bring the challenges presented here because a favorable decision is unlikely to provide redress. Plaintiffs contend first that their claims are not subject to the mandatory grievance procedures under the RSA. They argue alternatively that, even if they were supposed to exhaust administrative remedies, the Court should excuse them from that requirement because the administrative process was inadequate and futile and would yield absurd results. Plaintiffs also contend that they have standing to maintain their challenge. (Resp. at 18-21.)

## II.  LEGAL STANDARDS

Defendants move to dismiss under Fed. R. Civ. P. 12(b)(1).  A motion to dismiss under Rule 12(b)(1) challenges a federal court's jurisdiction to adjudicate the claim before it.  *See* Fed. R. Civ. P. 12(b)(1).  Being courts of limited jurisdiction, a federal court must have jurisdiction conferred by statute vesting the power to adjudicate claims.  *See Texas v. Travis Cnty., Texas*, 910 F.3d 809, 811 (5th Cir. 2018).  When a Rule 12(b)(1) motion is made in conjunction with other motions to dismiss, it should first address the jurisdictional attack.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  The burden of establishing that federal jurisdiction exists "rests on the party seeking the federal forum."  *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

Defendants alternatively move for dismissal under Fed. R. Civ. P. 12(b)(6), which challenges whether the complaint states a claim upon which relief may be granted.  In assessing the sufficiency of a complaint, a court considers whether it alleges "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  Plaintiffs assert that Defendants have not actually raised a challenge under Rule 12(b)(6), as they view the question as a jurisdictional one.  (*See* Resp. at 8-18 & n.2.)

## III.  ANALYSIS

Defendants argue that Plaintiffs cannot pursue their claims in this Court because they have not first submitted them to the grievance procedures prescribed by

the RSA. As stated above, the RSA contains provisions whereby blind vendors and SLAs, through separate procedures, may present grievances that can culminate in arbitration proceedings before the Secretary of Education. *See* 20 U.S.C. § 107d-1. In both instances, the statute provides that the arbitration panel's decision is the "final and binding" decision. *Id.* § 107d-2(a). The decision of the arbitration panel, then, becomes reviewable by a court under the APA. *See* 5 U.S.C. § 704.

The Fifth Circuit has stated that its "precedent treats the APA's judicial review provisions as limits on subject matter jurisdiction," although it has openly questioned whether this precedent aligns with more recent Supreme Court decisions clarifying that a statute is "jurisdictional" only if Congress says so. *Amin v. Mayorkas*, 24 F.4th 383, 389 & n.2 (5th Cir. 2022). Even so, the parties brief the issue primarily as a jurisdictional one. Because the undersigned concludes that exhaustion of administrative remedies is mandatory here, a decision about whether the issue is jurisdictional is not essential. *See Patten*, 9 F.4th at 925 (concluding that RSA grievance is not jurisdictional but nonetheless mandatory); *DACO Invs., LLC v. United States Small Bus. Admin.*, No. 6:22-CV-01444, 2024 WL 750594, at *5 (W.D. La. Feb. 22, 2024) (concluding that jurisdictional issue was irrelevant where exhaustion was mandatory).

Plaintiffs argue that they were not required to go through the RSA's grievance process because the claims they bring are unlike any that must be resolved through administrative proceedings. They point to the Supreme Court's framework in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), as providing the appropriate

6

framework and their principal support. That case involved an administrative process that Congress created to adjudicate challenges to enforcement of the Federal Mine Safety and Health Amendments Act. *Id.* at 203-06. The Court examined whether, notwithstanding the administrative process, a court could exercise jurisdiction over a mine operator's pre-enforcement challenges to the statute's administration. *See id.* at 202-05. The Supreme Court considered the issue in two steps. It first questioned whether Congress intended to delay judicial review in favor of administrative proceedings, noting that it will "find that Congress has allocated initial review to an administrative body where such intent is 'fairly discernible in the statutory scheme.'" *Id.* at 207 (quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 351 (1984)).

If that analysis points toward requiring administrative review before allowing judicial review, the Court next asks whether the claim raised is "of the type Congress intended to be reviewed within this statutory structure." *Id.* at 212. The Fifth Circuit has described this second-step inquiry as assessing whether "the claims at issue could 'be afforded meaningful review' if the agency considered the claims first." *Cochran v. U.S. Securities and Exchange Comm'n*, 20 F.4th 194, 205 (5th Cir. 2021) (en banc) (quoting *Thunder Basin*, 510 U.S. at 207). "To determine whether a claimant would receive meaningful judicial review, the [*Thunder Basin*] Court considered three factors: (1) whether 'a finding of preclusion could foreclose all meaningful judicial review'; (2) whether the claims were '"wholly collateral" to a statute's review provisions'; and (3) whether the claims were 'outside the agency's expertise.'" *Id.* (quoting *Thunder Basin*, 510 U.S. at 212-13).

7

Turning to the RSA, the first of these inquiries readily reveals Congress's intent to require claims be channeled through the administrative process. The RSA clearly sets out multi-step processes for seeking redress of grievances by blind vendors or SLAs. And it provides that the two arbitration processes end with a final agency action that is then subject to judicial review under the APA. *See* 20 U.S.C. §§ 107d-1, 107d-2. The RSA's statutory structure and language sufficiently demonstrate that its "exhaustion provision is mandatory for claims to which it applies." *Patten*, 9 F.4th at 925 (citing *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 104 (D.C. Cir. 1986)).

The undersigned proceeds to the next inquiry, which the parties heavily dispute: Are Plaintiffs' claims a type that Congress intended to go through the grievance procedures? Plaintiffs argue they are not for multiple reasons. They first contend that their claims were not intended to go through § 107d-1 because that procedure is only available for vendors' claims against SLAs arising out of the administration of the program, and their claims are neither against an SLA nor do they "aris[e] from the operation or administration of the vending facility program." *See* 20 U.S.C. § 107d-1(a). (Resp. at 9-10.)

To the extent Plaintiffs suggest Congress created a system whereby SLAs must grieve claims of federal agency action violations while allowing blind vendors to press those same claims by going straight to court, that position is not supported by authority. Plaintiffs point to no case allowing blind vendors to file lawsuits asserting claims that Congress intended SLAs to first pursue in administrative proceedings. In

*Kolb v. United States*, 160 Fed. Cl. 248 (2022), for example, blind vendors brought claims against the federal government arguing that its retention of certain monies violated the RSA. *Id.* at 251. They argued that their claims were not arbitrable because they were asserted by the vendors directly, not by an SLA. *Id.* at 253. The court, however, pointed out that the relevant question was whether the claim alleged a violation of the RSA and, because it did, the court concluded that it fell "squarely" within the requirement for arbitration. *Id.* Similarly, the District of Columbia Circuit concluded that vendors could not sue federal officials for RSA violations. *Weinberger*, 795 F.2d at 102-04. Instead, the RSA's establishment of a "clear and explicit system for resolution of disputes arising under the Act," the court held, means that a vendor must first seek redress through the SLA before filing a complaint against the federal official. *Id.* at 102-03.

Plaintiffs' claims also arise out of the operation or administration of the vending facility program. In arguing otherwise, Plaintiffs focus on AAFES, contending that AAFES does not operate or administer the RSA and that the AAFES policies of which Plaintiffs seek judicial review do not arise from operation or administration of the vending facility program. (Resp. at 11.) But the claim Congress has allowed Plaintiffs to seek is a grievance with the SLA pertaining to the SLA's failure to pursue the DoD's or AAFES's alleged violations of the RSA. *See Georgia Dep't of Hum. Res. v. Nash*, 915 F.2d 1482, 1488 (11th Cir. 1990) (noting that vendors may invoke remedial procedures of § 107d-1(a) to convince SLA to take action against federal agency for RSA violations); *cf. Middendorf v. U.S. Gen. Servs.*

9

*Admin.*, 92 F.3d 1193, 1996 WL 442512 (9th Cir. Aug. 5, 1996) (unpublished table decision) (requiring vendors to raise federal agency violations under § 107d-1(a)).  In this way, Plaintiffs' claims do concern their dissatisfaction with the manner in which the SLAs administer the vending facility program.

      The *Thunder Basin* considerations reinforce that Plaintiffs' claims are of a type that are expected to be processed through administrative proceedings.  Officials at the SLA and the Department of Education are familiar with and have expertise in the requirements of the RSA.  *See Cochran*, 20 F.4th at 205 (considering whether claims were "outside the agency's expertise").  Plaintiffs contend otherwise, arguing that their claims involve the application of military rules that are beyond any expertise the arbitration panels might have.  But *Thunder Basin* refutes the way in which Plaintiffs attempt to recast this issue.  In *Thunder Basin*, the mine operator made claims involving its rights under the National Labor Relations Act ("NLRA"), which it argued fell outside any expertise held by arbitration panels convened by the Federal Mine Safety and Health Review Commission.  *Thunder Basin*, 510 U.S. at 214-15.  Even so, the Supreme Court observed that the operator's claims "at root" required interpretation of rights and duties under the Mine Act, which was "squarely within the Commission's expertise." *Id.* at 214.  Similarly, Plaintiffs' claims do not merely ask the court to "review the paragraphs" of military regulations and policies in isolation.  (*See* Resp. at 11.)  They are seeking a determination that these paragraphs, when implemented, result in violations of the RSA.  That falls within areas of competency held by SLAs and the Secretary of Education.

Plaintiffs also contend that their claims are "wholly collateral to the types of disputes the [RSA] grievance process was designed to resolve or correct." (Resp. 12.) *See Cochran*, 20 F.4th at 205 (considering "whether the claims were wholly collateral to a statute's review provisions" (internal quotation marks omitted)). Fifth Circuit authority belies that contention. In *Cochran*, the court explained that "whether a claim is collateral to the relevant statutory-review scheme depends on whether that scheme is intended to provide the sort of relief sought by the plaintiff." 20 F.4th at 207. It observed that in *Elgin v. Department of Treasury*, 567 U.S. 1 (2012), the claim was not collateral because the relief sought was "precisely the kinds of relief" that the administrative process could provide. *Cochran*, 20 F.4th at 207 (citing *Elgin*, 567 U.S. at 22). Similarly, in *Thunder Basin*, the mine operator's claim was not collateral because, although it asserted claims under the NLRA and the Constitution, "it ultimately sought to avoid compliance with the Mine Act's . . . requirement." *Id.* (citing *Thunder Basin*, 510 U.S. at 205, 213-14). In contrast, an accounting firm's claim in *Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 561 U.S. 477 (2010), was collateral to proceedings before the PCAOB where the plaintiff was not seeking the type of relief that would normally come from that board: "rather than seeking to challenge the propriety of any particular rule or regulation, or to establish that it was not liable for a violation, the accounting firm sought to abolish the PCAOB." *Cochran*, 20 F.4th at 207. Stated another way, the accounting firm's claims were "structural constitutional claims, rather than substantive securities claims" and were therefore beyond the administrative process. *Id.*

11

Plaintiffs here do not make structural challenges, for example, by challenging the existence of the grievance procedures altogether. And the relief they seek—a determination that AAFES's rules are inconsistent with its obligations under the RSA—is substantive in nature and precisely the kind of determination that can be made through the RSA's administrative procedures. *See Patten*, 9 F.4th at 927. Accordingly, Plaintiffs' claims are not wholly collateral to the process for which the grievance procedures were designed.

Plaintiffs aver that the final *Thunder Basin* consideration weighs in their favor because finding their claims must be pursued through the administrative process could foreclose all meaningful judicial relief. (*See* Resp. at 13-16.)[1] *See Cochran*, 20 F.4th at 205 (considering "whether a finding of preclusion could foreclose all meaningful judicial review" (internal quotation marks omitted)). *Cochran* explained the meaning of this consideration as well. *See id.* at 208. Looking again to the Supreme Court's decisions in *Free Enterprise*, *Elgin*, and *Thunder Basin*, the en banc court explained that the difference in their outcomes turned on whether the plaintiffs sought substantive or structural relief. *Id.* In *Free Enterprise*, the accounting firm "asserted that it was harmed by the structure of the . . . statutory-review scheme

---

[1] Plaintiffs advance this argument as a reason for the Court to retain their claims even if they should have exhausted them. (Resp. at 13.) Defendants argue that, if the Court concludes Plaintiffs must pursue their claims in administrative proceedings, that would be a conclusion of jurisdictional significance that could not be excused based on a judicial doctrine. (Reply at 6.) Rather than treat this factor as a discretionary basis for excusing non-exhaustion, the undersigned addresses it among the considerations to determine whether exhaustion is required, as was done in *Thunder Basin* and *Cochran*.

itself." *Id.* That is, the plaintiff contended that judicial review after the administrative proceedings was insufficient because the plaintiff would by that time have suffered the very injury it sought to avoid—i.e., having to go through an illegitimate process—and that could not have been undone by later judicial proceedings. *Id.* at 208-09. The relief sought in *Thunder Basin* and *Elgin*, however, was substantive. *Id.*

Here again, Plaintiffs seek substantive relief—a declaration that AAFES's implementation of its policies violates the RSA to Plaintiffs' detriment. Plaintiffs assert that sending their claims through the administrative process might deprive them of any meaningful judicial relief by pointing to cases in which other courts have turned away vendors' arguments for certain relief. (*See* Resp. at 15-16.) It is not clear that these cases rest on the broad foundation Plaintiffs contend. For example, in *Maryland State Department of Education v. U.S. Department of Veterans Affairs*, 98 F.3d 165 (4th Cir. 1996), the court held that an arbitration panel convened pursuant to § 107d-1(b) could declare that a federal agency's actions violated the RSA, but the statute did not give the panel authority to then order the agency to take specific remedial action.[2] Plaintiffs read that case as meaning that Defendants could "simply refuse to remedy the violations" that an arbitration panel might find. (Resp. at 16 (quoting *Maryland State Dept. of Educ.*, 98 F.3d at 170).) The undersigned does not

---

[2] Under § 107d-2(b)(2)(C), once the arbitration panel finds that the agency is in violation of the RSA, the statute requires that "the head of any such department, agency, or instrumentality shall cause such acts or practices to be terminated promptly and shall take such other action as may be necessary to carry out the decision of the panel."

read the decision as Plaintiffs do. There, the Fourth Circuit held that the RSA vested the arbitration panel with authority to declare what violated the RSA, but it placed decisions concerning how the agency will come into compliance with the agency head. *Id.* at 169 (stating that § 107d-1(b) provides that that "arbitration panel will determine whether the federal entity is in violation of the Act, while the head of the federal entity will remedy the violation"). While the court discussed circumstances in which the agency's remedial actions might then be challenged through additional administrative proceedings, *see id.* at 171, it did not suggest that federal officials could simply ignore the panel's decision and do nothing. That other cases have turned away vendors' suits seeking monetary damages from SLAs based on alleged violations by federal agencies, *see, e.g.*, *Sauer v. U.S. Dep't of Educ.*, 668 F.3d 644 (9th Cir. 2012), also does not establish that Plaintiffs would have no ability to seek judicial review under the APA.

Plaintiffs' final argument against requiring their claims to be pursued through administrative proceedings is that such an outcome would produce absurd results. (Resp. at 16-17.) The absurdity, in Plaintiffs' view, is that the RSA requires blind vendors to seek relief first through administrative proceedings to resolve disputes that non-participants in the vending facility program can take directly to court. In the context of statutory interpretation, however, absurdity is not synonymous with oddity or incongruity. *See Texas Brine Co., L.L.C. v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482, 486 (5th Cir. 2020). Rather, "[t]he absurdity bar is high[.]" *Id.* To be absurd in this context, "[t]he result must be preposterous, one that 'no reasonable person could

14

intend.'" *Id.* (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 237 (2012)). Even if one sees it as unfair or unusual, that Congress designed a procedure for blind vendors to pursue grievances through an administrative process that others cannot—or do not have to, depending on perspective—is not "preposterous."

Because the undersigned concludes that Plaintiffs must pursue their claims in administrative proceedings before filing this action, it is not necessary to determine Defendants' alternative argument that Plaintiffs lack standing.

## IV.  CONCLUSION

For these reasons, the undersigned **RECOMMENDS** that Defendant's motion to dismiss (Dkt. No. 15) be **GRANTED** and Plaintiffs' claims be **DISMISSED without prejudice** to their pursuit in administrative proceedings.

**SO RECOMMENDED** on January 28, 2025.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE